R. P. DONNELLY *v*. R. D. FRITTS.

(*Knoxville*. September Term, 1929.)

Opinion filed November 16, 1929.

606

Sam W. Price, Butler & Grayson and Donnelly & Donnelly, for plaintiff in error.

Divine & Guinn, and E. E. Garland, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

At the January, 1929, term of the Quarterly County Court of Johnson County, the plaintiff in error, R. P. Donnelly, and the defendant in error, R. D. Fritts, were candidates for the office of County Superintendent of Schools of that County. It seems that upon the roll call Fritts received nine votes and Donnelly eight votes. Upon this result being made known, the Chairman of the County Court, Esquire R. H. Butler, who had not voted on the roll call, announced that as a Magistrate he would vote for Donnelly and this making a tie as Chairman he would break the tie by voting for Donnelly which, he said elected Donnelly. About the time the Chairman

was making this announcement, Esquire John F. Ward, who had not voted on the original roll call, stated that if Esquire Butler proposed voting that he (Esquire Ward) would vote himself. Had Esquire Ward's vote been counted, Fritts would have received ten votes and Donnelly (with Esquire Butler voting for him) would have received nine notes and there would have been no tie for the Chairman to break.

There is a controversy in the proof as to whether Esquire Ward's statement and offer to vote was made before Esquire Butler had voted as Magistrate and again as Chairman and announced the result. At any rate, Chairman Butler ruled that Esquire Ward's attempt to vote came too late, that the election was closed and Donnelly chosen.

Within a few days Fritts instituted proceedings in the County Court to contest the election of Donnelly as County Superintendent. Donnelly filed a demurrer and an answer and the hearing of the matter was had at the April, 1929, term of the Quarterly County Court. Upon this hearing the contest of Fritts was sustained by a vote of that tribunal and Fritts declared to have been elected County Superintendent.

Donnelly filed a petition for *certiorari* to obtain a review of this action of the Quarterly County Court in the Circuit Court of Jackson County and the writ of *certiorari* was awarded by that court. The Quarterly County Court also permitted an appeal from its action giving the office to Fritts and the matter was thus before the Circuit Court both on *certiorari* and appeal. Upon a hearing on the merits that court decided in favor of Fritts and the case has been brought before us on an appeal in error.

608

■ A preliminary motion was made in the Circuit Court which challenged the jurisdiction there to review the proceedings of the County Court above detailed. This motion appears to have been overruled by the Circuit Court. We think the motion should have been sustained.

In the case of *Leonard* v. *Haynes,* 82 Tenn. (14 Lea), 447, this court held that the county court was the proper tribunal for the hearing of a contested election with respect to the office of a county superintendent. There being no specific statutory provision as to the jurisdiction of a contested election as to said office, it was held that the court having the power to induct into such office had the jurisdiction to determine the validity of the title of the applicant, citing *Blackburn* v. *Vick,* 49 Tenn. (12 Heisk.), 377, and *State ex rel.* v. *Burchfield,* 80 Tenn. (12 Lea), 30. It was further held in *Leonard* v. *Haynes,* that the Chairman of the County Court had no jurisdiction to determine such a contest but that jurisdiction thereof was in the Quarterly County Court.

While later decisions of this court, *Johnson* v. *Brice,* 112 Tenn., 59, and *Sheffy* v. *Mitchell,* 142 Tenn., 48, have narrowed the jurisdiction of the Quarterly County Court with respect to hearing election contests and have decided that in most cases such jurisdiction committed to the County Court is to be exercised by the County Judge or County Chairman and not by the Quarterly County Court, nevertheless *Leonard* v. *Haynes, supra,* has not been questioned. On the contrary the case seems to have been approved in *Johnson* v. *Brice, supra,* and it seems to have been conceded in the case last mentioned that *Leonard* v. *Haynes,* was correctly determined. So that it may be taken as settled law that jurisdiction of a contested election of a county superintendent of schools,

when that election is by the magistrates assembled instead of by the people, is cognizable in the quarterly county court.

In *Leonard* v. *Haynes,* it was said:

"Moreover, if the *chairman* of the county court of Marshall county have the jurisdiction to hear and determine this contest, we will have the singular anomaly of the county court of that county, as a court, expressing its judgment or decree, through the justices constituting it, that Haynes was elected county superintendent, and that court, as a court, expressing its judgment or decree, through its chairman, that Leonard was elected."

It was further reasoned in *Leonard* v. *Haynes, supra,* that in the election of a county superintendent by the Quarterly County Court legislative powers are exercised. The court said "that in the absence of statutory limitation, the justices, as a legislative body, can adopt their own methods, not in conflict with the law of the land, of expressing their legislative choice, and if they adopt a method of expressing their will, and under this method, as construed by judicial rules, do express their will, but they decide that they have not, and proceed under their method until they do reach a choice acceptable to their legislative judgment, then this legislative judgment, if not violative of the law, cannot be reviewed and set aside by the courts."

This court has repeatedly declared that the determination of the quarterly county court with reference to the assessment of taxes, the building of a courthouse, and like things, political, legislative and municipal in character, is not reviewable. *County Court of Obion County* v. *Marr,* 27 Tenn. (8 Humph.), 634; *Casey* v. *Justices,* 37

Tenn. (5 Sneed), 516; *Keely* v. *Haywood County*, 1 Shan. Cas., 610. In *Bouldin* v. *Lockhart*, 62 Tenn. (3 Baxt.), 262, it was held that the powers granted the Quarterly County Court by chapter 103, section 7, of the Acts of 1873, to count and declare the result of votes cast in any county for the removal of its county seat were not judicial and did not authorize a review of the proceedings of said court by writs of *certiorari* and *supersedeas* to the circuit court. To the same intent in general are *Gamble* v. *Paine*, 141 Tenn., 548, and *Blair* v. *Carmichael*, 10 Tenn., 306.

The hearing of this contest by the Quarterly County Court at its April, 1929, term really involved a determination by that body as to whether proper rules of procedure had been followed in the election of the County Superintendent at the previous January term. If the justices concluded that their former procedure was irregular, not in accordance with parliamentary practice or their own methods of transacting business, it was within their province to reconsider their former action. The legislative judgment of the quarterly county court upon a matter of this character, "not in conflict with the law of the land," as said in *Leonard* v. *Haynes*, may not be reviewed by the courts.

The case before us is to be distinguished from cases in which the quarterly county court has acted illegally and beyond its authority. Such action as that can of course be reviewed in courts upon proper procedure. This case is merely one in which the justices have declared that action appearing to have been taken by them formerly was irregular and not an expression of their will and in which they proceeded by a method within their competency to declare their real intent.

For the reasons stated, the proceedings will be dismissed at Donnelly's cost. The trial judge ordered a reference as to Fritts' damages, if any. Since, in our opinion, the circuit court was without jurisdiction of the matter, as it came up, we think any claim of the kind that Fritts may have against Donnelly must be asserted in a separate proceeding.