# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 14, 2020 Session

## SIDNEY W. WHITE ET AL. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-1120     Jim Kyle, Chancellor**

_____

### No. W2019-00918-COA-R3-CV

_____

Appellants were injured in a car accident and, with the permission of their insurance company, Appellee State Farm Mutual Automobile Insurance Company ("State Farm"), settled with the at-fault driver for his policy limits under his coverage with United Services Automobile Association ("USAA"). To fully recover for their injuries, Appellants notified State Farm of their willingness to settle or submit their underinsured motorist ("UIM") claim to binding arbitration. After evaluating Appellants' claim, State Farm informed Appellants that it would not offer a settlement for the UIM claim because it believed they had been fully compensated by the payment from USAA. Appellants, in response, demanded that State Farm elect to either participate in binding arbitration or decline arbitration and preserve its subrogation rights under Tennessee Code Annotated section 56-7-1206 ("the Statute"). Believing that its obligation under the Statute was never triggered, State Farm refused to make an election. Appellants filed an action for declaratory judgment asking the trial court to declare that State Farm failed to comply with the Statute. On competing motions for summary judgment, the trial court granted State Farm's motion and denied Appellants' motion. Finding no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Randall N. Songstad, Memphis, Tennessee, for the appellants, Mardess W. White, and Sidney W. White.

Christopher L. Vescovo, Memphis, Tennessee, for the appellee, State Farm Mutual Automobile Insurance Company.

## OPINION

## I. Background

On September 10, 2017, Sidney and Mardess White (the "Whites" or "Appellants") were involved in an automobile accident with another driver, Keireon Smith. Mr. Smith, the at-fault driver, was insured by United Services Automobile Association ("USAA"). Mr. Smith's policy with USAA included liability coverage of $25,000 per person and $50,000 per accident. The Whites' automobile insurance policy was issued by State Farm Mutual Automobile Insurance Company ("State Farm" or "Appellee") and included underinsured motorist ("UIM") coverage with policy limits of $100,000 per person and $300,000 per accident.

By letter dated April 24, 2018, the Whites, through their attorney, notified State Farm of their intent to settle with USAA for the liability insurance policy limits of $25,000 per person and $50,000 per accident. The letter also explained that the Whites were willing to submit their UIM claim to arbitration and that they hoped to work amicably toward a settlement with State Farm.

On May 2, 2018, State Farm responded giving the Whites permission to settle with USAA. State Farm also explained that it was "in the process of evaluating the under-insured demand and [would] present an offer as soon as possible." Thereafter, the Whites settled with USAA for $50,000.

On May 16, 2018, State Farm informed the Whites that it would not offer a settlement for their UIM bodily injury coverage because State Farm believed the Whites had been fully compensated for their injuries. On May 30, 2018, the Whites sent State Farm a letter explaining that they were

> putting [State Farm] on notice that [they were] invoking the provisions of [Tennessee Code Annotated] 56-7-1206 [("the Statute")] wherein State Farm ha[d] thirty (30) days from the date of [the] letter to tender $25,000 to each insured in order to proceed to a jury trial or waive jury and go to arbitration.

The letter further stated that the Whites fully complied with their obligations under the Statute as set forth in the April 24, 2018 letter. By letter dated June 28, 2018, State Farm informed the Whites that "the provisions of th[e] [S]tatute have not been adhered to in order to bind State Farm to arbitration."

On July 30, 2018, the Whites filed a Petition for Declaratory Judgment in the Chancery Court of Shelby County ("trial court"), wherein they alleged, *inter alia*, that State Farm refused to comply with its obligation under the Statute. State Farm filed its

answer to the petition on October 18, 2018 wherein it denied that the mandatory prerequisites under the UIM Statute had been met.

On February 6, 2019, the parties filed a joint stipulation of facts. On March 5, 2019, the parties filed competing motions for summary judgment. The Whites argued, *inter alia*, that State Farm failed to follow the requirements of Tennessee Code Annotated sections 56-7-1206(g) and (k). Conversely, State Farm argued, *inter alia*, that because the requirements of Tennessee Code Annotated section 56-7-1206(g)(2) had not been met, State Farm's obligation under the Statute was never triggered. By order of April 25, 2019, the trial court granted State Farm's motion for summary judgment and denied the Whites' motion for summary judgment. The Whites appeal.

## II. Issue

Appellants' sole issue on appeal is whether the trial court erred when it found that the requirements under Tennessee Code Annotated section 56-7-1206(g)(2) had not been met such that State Farm was not obligated to make an election under the Statute.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps***., 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The parties filed a joint stipulation of facts and agree that there are no genuine issues of material fact. However, because the parties filed competing motions for summary judgment, both parties allege that they are entitled to judgment as a matter of law. We now turn to that question.

## IV. Analysis

In Tennessee,

> if a party . . . alleged to be liable for the bodily injury . . . of the insured offers the limits of all liability insurance policies available to the party . . . in settlement of the insured's claim, the insured . . . may accept the offer [and] execute a full release of the party or parties on whose behalf the offer is made . . . .

Tenn. Code Ann. § 56-7-1206(f). The insured may also "preserve the right to seek additional compensation" from his or her UIM insurance carrier upon agreement that the insured will submit his or her UIM claim to binding arbitration on all issues of tort and liability damages. Tenn. Code Ann. § 56-7-1206(f).

Tennessee Code Annotated section 56-7-1206(g) outlines certain requirements and conditions that must be met to accomplish a settlement under the Statute. Section 56-7-1206(g)(2) provides that the liability insurance company, which provided coverage to the party to be released,

> shall give written notice of the offer to the insured's [UIM] insurance carrier or its attorney, provide verification of the coverage upon request and confirm to the [UIM] insurance carrier or its attorney that the party or parties to be released will agree in writing to cooperate with the [UIM] insurance carrier in connection with the arbitration of the [UIM] claim; provided, that the [UIM] insurance carrier will agree to waive its subrogation rights against the party or parties to be released;

Tenn. Code Ann. § 56-7-1206(g)(2). Additionally, Section 56-7-1206(g)(3) requires that "the insured . . . shall give written notice to the [UIM] insurance carrier . . . of the insured's intent to accept the offer and agreement to submit the [UIM] claim to binding arbitration." Tenn. Code Ann. § 56-7-1206(g)(3). If the requirements of Sections 56-7-1206(g)(2) and (g)(3) are met, then the UIM carrier may either (1) consent to settlement, agree to binding arbitration of the UIM claim, and waive its subrogation rights, Tenn. Code Ann. § 56-7-1206(g)(4); or (2) decline binding arbitration and preserve its subrogation rights. Tenn. Code Ann. § 56-7-1206(k).[1]

USAA offered the Whites $25,000 per person, the limits of its liability insurance policy, in settlement of the Whites' claims against Mr. Smith. *See* Tenn. Code Ann. §

---

[1] Tennessee Code Annotated section 56-7-1206(k) provides, in pertinent part:

> Notwithstanding the provisions of this section relating to binding arbitration, after receipt of both of the notices referred to in subdivisions (g)(2) and (3), the [UIM] insurance carrier, at its option, may elect to decline binding arbitration and preserve its subrogation rights; provided, that within thirty (30) days after receipt of both of the notices, it pays the insured the full amount of the offer made by the liability insurance company or companies providing coverage to the party or parties seeking the release.

Tenn. Code Ann. § 56-7-1206(k).

56-7-1206(f). In accordance with Section 56-7-1206(g)(3), the Whites notified State Farm of their intent to settle with USAA and informed State Farm of their willingness to submit their UIM claim to arbitration. *See* Tenn. Code Ann. § 56-7-1206(g)(3).

At issue in this case is whether the requirements of Section 56-7-1206(g)(2) were met. It is undisputed, and the parties agreed in their joint stipulation of facts, that

> [a]t no time did USAA as the liability carrier give written notice of the offer of the liability limits and confirm to State Farm that its insureds, the Smiths, [would] agree in writing to cooperate with State Farm in connection with any future arbitration.

Nonetheless, the Whites argue that the requirements of Section 56-7-1206(g)(2) were met, and that State Farm was required, under Section 56-7-1206(g)(4) or 56-7-1206(k), to elect to either submit to binding arbitration, or to decline binding arbitration and preserve its subrogation rights.

The Whites' argument rests on the placement of the phrase "upon request" in Section 56-7-1206(g)(2). The Whites contend that the phrase "upon request" applies to the liability insurance company's duty to (1) provide verification of the coverage, and (2) confirm to the UIM insurance carrier that the party to be released would agree to cooperate with the UIM insurance carrier at arbitration. *See* Tenn. Code Ann. § 56-7-1206(g)(2). Because State Farm did not request that USAA provide it with either verification of the liability insurance coverage or with confirmation that Mr. Smith would cooperate with State Farm at arbitration, the Whites contend that the requirements of (g)(2) were satisfied.

Conversely, State Farm argues that the phrase "upon request" only applies to USAA's duty to provide verification of the coverage and not to USAA's duty to confirm, to State Farm, that Mr. Smith would agree to cooperate with State Farm at arbitration. Further, because it is undisputed that USAA did not provide State Farm with confirmation that Mr. Smith would cooperate with State Farm at arbitration, State Farm contends that the requirements of Section 56-7-1206(g)(2) were not satisfied and, as such, it was not required to make an election under either Section 56-7-1206(g)(4) or (k).[2]

In resolving the foregoing dispute, the trial court found that the Legislature's use

---

[2] We note that State Farm is not disputing that the first and second parts of (g)(2) were satisfied. The Whites' attorney gave State Farm written notice of USAA's offer in the April 24, 2018 letter to State Farm, and State Farm did not request that USAA provide verification of the liability insurance coverage. *See* Tenn. Code Ann. § 56-7-1206(g)(2) ("The liability insurance company . . . providing coverage to the party . . . to be released shall give written notice of the offer to the insured's [UIM] insurance carrier . . ., provide verification of the coverage upon request . . . .").

of the word "shall" indicates that the requirements and conditions in Section 56-7-1206(g)(2) must be fulfilled before State Farm would be required to make an election under the Statute. The trial court further found that

> [t]he parties . . . stipulated that at no time did [USAA] . . . confirm[] to State Farm that USAA's insured[] would agree in writing to cooperate with State Farm in connection with any future arbitration.

Therefore, the trial court denied the Whites' motion for summary judgment and granted State Farm's motion for same. While we do not dispute that the Legislature's use of "shall" means that the statutory requirements are mandatory, the parties' arguments, *supra*, rest on the more subtle question of whether the phrase "upon request" is a triggering event for the requirement that the liability insurance company confirm to the UIM insurance carrier that the party to be released would agree in writing to cooperate with the UIM insurance carrier at arbitration. *See* Tenn. Code Ann. § 56-7-1206(g)(2).

In interpreting statutes, the Tennessee Supreme Court has provided the following guidance:

> Issues of statutory construction present questions of law that we review *de novo* with no presumption of correctness. ***Martin v. Powers***, 505 S.W.3d 512, 518 (Tenn. 2016). The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. ***State v. Smith***, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." ***Mills v. Fulmarque, Inc.***, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information. ***Frazier v. State***, 495 S.W.3d 246, 249 (Tenn. 2016). We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation. ***Baker v. State***, 417 S.W.3d 428, 433 (Tenn. 2013). We do not alter or amend statutes or substitute our policy judgment for that of the Legislature. ***Armbrister v. Armbrister***, 414 S.W.3d 685, 704 (Tenn. 2013).

***Coleman v. Olson***, 551 S.W.3d 686, 694 (Tenn. 2018). Further, "[t]his Court is . . . bound by the general rules of grammatical construction" when we interpret the language in statutes. ***Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water***, 578 S.W.3d 26, 34 (Tenn. Ct. App. 2018), appeal denied (Apr. 15, 2019) (quoting ***Hawkins v. Case Mgmt., Inc.***, 165 S.W.3d 296, 300 (Tenn. Ct. App. 2004) (citing ***Melton v. State***, 23 S.W.2d 662 (Tenn. 1930); ***McCollum v. Huffstutter***, No. M2002-00051-COA-R3-CV,

2002 WL 31247077 (Tenn. Ct. App. Oct. 8, 2002))).  An examination of the grammatical construct of (g)(2) clearly leads to the conclusion that the prepositional phrase, "upon request," modifies only the phrase requiring USAA to provide verification.  Section (g)(2) outlines a series of three things the liability insurance company "shall" do.  Items in a series are most often separated from one another with a comma.  The use of the comma clearly delineates the items in the series (and any phrases modifying those items) from other items (and their modifiers) in the series.

The confusion in section (g)(2) arises from the grammatical construction joining the last two requirements, i.e., "provide verification of coverage **upon request and** confirm . . . that the party . . . to be released will . . . cooperate . . . ." (Emphasis added). In the absence of a comma separating the prepositional phrase "upon request" from the coordinating conjunction "and," the Whites argue that the prepositional phrase "upon request" modifies both the second and third statutory requirements, such that, in the absence of a request from the UIM insurance carrier, State Farm, USAA would neither be required to provide verification of coverage nor to confirm that the party to be released would cooperate.

There has been much debate in academics concerning the necessity of the so-called Oxford or Serial Comma, i.e., the comma used before the coordinating conjunction that separates the last item in a series.  Had the Legislature included this comma between "upon request," and "and," it would be clear that the prepositional phrase "upon request" modifies only the requirement that the liability insurance company provide verification of coverage.

However, even in the absence of the Oxford Comma, the Legislature joined the last two requirements with the coordinating conjunction "and."  Coordinating conjunctions, i.e., and, or, but, for, nor, so, are used to connect grammatically equal elements.  *See* DIANA HACKER & NANCY SOMMERS, THE BEDFORD HANDBOOK 233 (Michelle M. Clark et al. eds., 9th ed. 2014) ("Choose coordinat[ing conjunctions] to indicate that the ideas are equal or nearly equal in importance.").  As such, "and" provides a line of demarcation separating the words that come before it from those used after it.  Here, the prepositional phrase falls immediately before the coordinating conjunction, i.e., "upon request and."  As a coordinating conjunction, "and" provides a grammatical wall between what comes before it and what comes after it in the sentence. Thus, applying modern grammatical rules and constructs, "upon request" modifies only the second requirement, i.e., "to provide verification of coverage."  Because "upon request" modifies only the second requirement, the third requirement, i.e. that USAA would confirm to State Farm that Mr. Smith would agree to cooperate with State Farm at arbitration, was a mandatory requirement, which State Farm did not have to request.  In other words, absent any request, USAA was required to notify State Farm of Mr. Smith's willingness to cooperate with arbitration in order to trigger State Farm's obligation to make its election under the Statute.  It is undisputed that USAA did not confirm to State

Farm that Mr. Smith would cooperate with State Farm at arbitration.  It further appears that Appellants, who desire arbitration, have taken no action to obtain USAA's confirmation that Mr. Smith would cooperate with State Farm at arbitration.  As such, the third requirement of (g)(2) has not been satisfied, and State Farm's duty to elect an option has not been triggered under the Statute.  Accordingly, we affirm the trial court's order.

## V.  Conclusion

For the foregoing reasons, we affirm the trial court's order.  The case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed to the Appellants, Sidney W. White and Mardess W. White, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE